NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERILYNN PAYNE, RICK RAND, JOHN GUMPERZ, JANINE SMITH, AND TAMMARA FELDMAN, on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>FUJIFILM U.S.A., INC. d/b/a FUJI PHOTO FILM USA, INC., )<br><br>Defendant. ) | Hon. Garrett E. Brown, Jr.<br><br>Civil Action No. 07-385 (GEB)<br><br>**MEMORANDUM OPINION** |

**BROWN**, Chief Judge:

This matter comes before the Court on the motion for class certification (Doc. No. 61) filed by Plaintiffs Jerilynn Payne, Rick Rand, John Gumperz, Janine Smith, and Tammara Feldman, against Defendant FujiFilm U.S.A., Inc. For the following reasons, the Court will deny Plaintiffs' motion for class certification.

**I. BACKGROUND**

On January 24, 2007, Plaintiff Jerilynn Payne, a Maryland resident, filed her initial complaint in Superior Court of New Jersey asserting claims relating to the allegation that Defendant's FinePix 3800 camera "contained a defect with the internal memory battery." (Def.'s Notice of Removal.) On January 27, 2007, Defendant filed a Notice of Removal to the United States District Court for the District of New Jersey. On March 20, 2007, Plaintiff Payne filed a First Amended Complaint, again asserting claims relating to an alleged "defect with the internal

1

memory battery" of Defendant's FinePix 3800 camera. (First Am. Compl. ("FAC") ¶ 2.) On March 30, 2007, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint. (Doc. No. 22.) On December 28, 2007, the Honorable Joseph A. Greenaway, Jr., then-United States District Judge, denied Defendant's motion to dismiss. (Doc. Nos. 27, 28.)

On November 3, 2008, Plaintiffs filed their Second Amended Complaint naming five additional plaintiffs, three from New Jersey (Plaintiffs John Gumperz, Janine Smith, and Tammara Feldman) and two from New York (Plaintiffs Rick Rand and Kim Van Pelt). (Second Am. Compl. ("SAC") ¶ 9.) Plaintiff Kim Van Pelt did not attend her scheduled deposition, and her claims were dismissed from the Second Amended Complaint by stipulation of the parties on July 28, 2009. (Doc. No. 60.) Plaintiffs' SAC also amended their allegations regarding defect, this time asserting that Defendant's FinePix 3800 camera "contained a defect with the internal memory battery and/or power assembly." (SAC ¶ 2.) The SAC contains five counts: (1) breach of express and implied warranties; (2) damages under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et. seq.*; (3) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*; (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.

On September 30, 2009, Plaintiffs filed the instant motion for class certification. (Doc. No. 61.) Plaintiffs seek application of New Jersey law and certification of a nationwide Class defined as "[a]ll purchasers or owners in the United States of Fujifilm FinePix 3800 digital cameras, designed, manufactured, marketed, distributed or sold by Fujifilm since 2002." (Pls.' Br. at 13.)[1]

---

[1] By Order of March 10, 2010, this matter was reassigned to the undersigned.

**II. DISCUSSION**

Rule 23 of the Federal Rules of Civil Procedure governs class actions. The party seeking class certification bears the burden of demonstrating that all four requirements of Rule 23(a) are satisfied and that the putative class qualifies under one of the three sections of Rule 23(b). *Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 449 (D.N.J. 2009). The four requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). With regard to the Rule 23(b) requirements, of which only sections (b)(2) and (b)(3) are applicable to this case, the Court must determine that:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

"Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met.'" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "'A class certification decision requires a thorough examination of the factual and legal allegations,'" and "[t]he court may 'delve beyond the pleadings to determine whether the requirements for class certification are satisfied.'" *Id.* at 309, 316 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166, 167 (3d Cir. 2001)). That decision "calls for findings by the

3

court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307.  Moreover, "[t]he court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits--including disputes touching on elements of the cause of action." *Id.*  The court may conduct a "'preliminary inquiry into the merits'" and "'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'"  *Id.* at 317 (quoting *Newton*, 259 F.3d at 166, 168).

Plaintiffs seek certification under Rule 23(b)(2) and Rule 23(b)(3).  Because the Court concludes that Plaintiffs have failed to establish that certification is proper under either Rule 23(b)(2) or Rule 23(b)(3), the court need not address the question of whether Plaintiffs have satisfied the threshold Rule 23(a) requirements, *see Chin v. Chrysler Corp.*, 182 F.R.D. 448, 453 (D.N.J. 1998), and will deny Plaintiffs' motion for class certification.

  A.  Rule 23(b)(2) Requirements

An action may be maintained as a class action under Rule 23(b)(2) where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  If monetary damages are sought by plaintiffs, the Court "'may only certify a class [under Rule 23(b)(2)] if the damages are incidental to the primary claim for injunctive or declaratory relief.'"  *Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 117 (D.N.J. 2009) (alteration in original) (quoting *Barabin v. Aramark Corp.*, Civ No. 02-8057, 2003 U.S. App. LEXIS 3532, at *1 (3d Cir. Jan. 24, 2003)); *see also Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142 (3d Cir. 1998) ("Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'").

In this case Plaintiffs seek compensatory damages, statutory damages, punitive damages, and a refund of monies spent purchasing, repairing, and/or disposing of their cameras. (SAC at 24-25.)  Although Plaintiffs also ask for equitable and injunctive relief enjoining Defendant from pursuing policies and practices regarding the allegedly defective cameras, the record indicates that Plaintiffs' main goal is to obtain monetary damages, and the Court cannot conclude that the monetary damages are merely incidental to the class claim for injunctive relief.  Therefore, the Court will deny Plaintiffs' motion for class certification pursuant to Rule 23(b)(2).

B.  Rule 23(b)(3) Requirements

Certification under Rule 23(b)(3) is permissible when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).  The predominance requirement of Rule 23(b)(3) "'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).  It "'requir[es] more than a common claim,'" *id.* (quoting *Newton*, 259 F.3d at 187); rather, "'[i]ssues common to the class must predominate over individual issues," *id.* (quoting *Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998)).  "Because the 'nature of the evidence that will suffice to resolve the question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (citations omitted).  "'If proof of the essential elements of the cause of action requires individual treatment, then class certification

is unsuitable.'" *Id.* (quoting *Newton*, 259 F.3d at 172).

    1. Common Factual Issues Do Not Predominate

  Where plaintiffs' claims are all based on an alleged common product defect, courts in this District have recognized that even the basic issue of whether the common defect exists may defeat predominance and render the class action unmanageable. *See Chin v. Chrysler Corp.*, 182 F.R.D. 448 (D.N.J. 1998); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332 (D.N.J. 1997). In *Ford Ignition Switch,* the plaintiffs, alleging that certain vehicles manufactured by Ford contained a defective ignition switch, brought causes of action for strict products liability, fraudulent concealment, violation of state consumer fraud statutes, breach of contract, breach of express warranty, breach of implied warranty, and Magnuson-Moss Warranty Act claims. 174 F.R.D. at 337-38. The court recognized that "[o]n each of plaintiffs' causes of action, the question whether the ignition switches in plaintiffs' vehicles are defective is vital to plaintiffs' attempts to establish liability." *Id.* at 342. The court noted that in that case "the question of defect may be likely to turn . . . on facts particular to each individual plaintiff," and ultimately concluded that "regarding the basic issue of defect, common issues will not predominate" over the individual issues affecting the class members. *Id.* at 342, 344.

  Similarly, in *Chin*, the plaintiffs alleged that Chrysler sold automobiles with defective anti-lock braking systems in violation of the Magnuson-Moss Warranty Act, the common law governing fraud and breach of express and implied warranties. 182 F.R.D. at 451. The court, in denying the plaintiffs' motion for class certification, found that "[p]roving a class-wide defect where the majority of class members have not experienced any problems with the alleged defective product, if possible at all, would be extremely difficult." *Id.* at 455. Moreover, the

6

court recognized that "[e]ven where the alleged defect has manifested itself, individual issues of actual cause must be adjudicated." *Id.* Because of those considerations, the court concluded that "proving the existence of the alleged class-wide defect is not the simple task that Plaintiffs make it out to be and is a factor that weighs against a finding of factual predominance." *Id.*

The same reasoning has been applied by courts in other Districts in cases with factual scenarios closely resembling the facts in this case. In *In re Canon Cameras Litigation*, the plaintiffs brought claims for unjust enrichment, breach of warranty, and violation of certain consumer protection laws, all arising from an alleged defect in certain models of Canon cameras. 237 F.R.D. 357, 358 (S.D.N.Y. 2006). The court denied the plaintiffs' motion for class certification, noting that plaintiffs failed to show that more than a small fraction of the cameras malfunctioned for any reason. *Id.* at 359. The court recognized that because all of plaintiffs' claims were based on an alleged common defect, proof of a malfunction would be necessary to any of plaintiffs' claims. *Id.* at 360. Because plaintiffs failed to "meaningfully contest that the class they seek to certify likely consist[ed] in overwhelming measure of owners of cameras that did not malfunction at all," the court concluded that plaintiffs failed to establish that common factual issues predominate. *Id.* The court also noted that even in the instances where cameras did malfunction, "the malfunctions may have been caused by a variety of factors -- many of which, such as customer misuse of the camera, would not result in manufacturer liability under any theory -- and that determination of the actual cause of a particular malfunction would require highly individualized fact finding." *Id.* The court concluded that

> where the portion of the proposed class that even suffered malfunctions appears to be tiny, plaintiffs' proposal to certify the class of all camera owners, then determine which few suffered

7

>malfunctions, and then determine which few of those few even arguably can attribute the malfunctions to the design defect here alleged, would render the class action device nothing more than a facade for conducting a small number of highly individualized cases.

*Id.*

Likewise, in *In re Microsoft Xbox 360 Scratched Disc Litigation*, the plaintiffs alleged that there was a common defect in Microsoft's Xbox 360 video game console that caused scratches on video game discs inserted into the console. No. C07-1121-JCC, 2009 U.S. Dist. LEXIS 109075, at *6 (W.D. Wash. October 5, 2009). In denying the plaintiffs' motion for class certification, the court held that individual issues of damages predominated over common issues because most of the members of the proposed class had not actually experienced the alleged defect. *Id.* at *23. The court noted that "[i]n today's era of increasingly sophisticated [technology], many of the millions of satisfied owners will have replaced their consoles in a few years with a new system that makes the Xbox obsolete by incorporating new technology." *Id.* at *20-21. The court recognized that "[i]f the defect has not manifested [during the limited useful life of the Xbox 360], the buyer has received what he bargained for," and "[i]ndividual issues of damages therefore preclude the certification of the [proposed class]." *Id.* at *21 (alterations in original). The court also found that individual issues of causation preclude certification because "[w]hether each user's actions constituted misuse, and whether his or her use/misuse caused the damage, would present individual issues of fact for the jury." *Id.* at *22.

Additionally, in *Arabian v. Sony Electronics Inc.*, the plaintiffs filed an action against Sony Electronics alleging a common defect in certain Sony laptops and asserting violations of various consumer fraud and unfair competition laws and breaches of express and implied warranties relating to that defect. No. 05-CV-1741, 2007 U.S. Dist. LEXIS 12715, at *2-3 (S.D.

Cal. Feb. 22, 2007). Although the plaintiffs had asserted numerous claims, the court recognized that "[o]ne of the central tenets of Plaintiffs' Rule 23(b)(3) argument is that there is a common defect among all FX laptops." *Id.* at *37. The court noted that "[g]iven the evidence that in excess of 300,000 FX laptops were sold in the United States, combined with the lack of evidence that a majority of these owners experienced common problems from a common defect," the majority of the putative class members likely would not have a recognizable claim and the action would "'metastasize[] into millions of individual claims'" that would be fatal to a showing of predominance. *Id.* at *40-41 (quoting *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y. 1982)). The court emphasized that it was making no determinations regarding the merits of the plaintiffs' claims, but rather the lack of evidence of a common defect amongst the majority of users was instructive as to the plaintiff's failure to demonstrate that common factual issues predominate over individual ones. *Id.* at *39.

In this case, Defendants sold approximately 290,000 FinePix 3800 cameras in the United States between 2002 and 2004. (Maxwell Dep. at 31:21-32:8; Pls.' Br. at 1.) Of that number, the number of cameras returned for any reason whatsoever was only approximately four percent, (Maxwell Dep. at 59:6-14, 186:14-18), and the number of cameras returned for any kind of "power problem" was between one and two percent, (Maxwell Dep. at 70:23-72:20). That percentage comports with Plaintiffs' conclusion that approximately thirty percent of the FinePix 3800 cameras that were returned for repairs were repaired for some kind of "power problem." (Pls.' Br. at 11; Green Decl, Ex. 14 at 12.) Thus, the Court is faced with an alleged class-wide defect that has not manifested in the great majority of the proposed class. Moreover, both Plaintiffs' and Defendant's experts acknowledged that different power problems can be caused

by a variety of factors, including impact damage, water, a short circuit, extreme temperatures, blown fuses, tamper damage, normal wear and tear, or simply improper batteries. (*See* Hadid Dep. at 18:20-24; 32:23-33:11; 44:10-18; DiEuliis Dep. at 66:18-67:22, 94:20-95:15-21; Engelmaier Dep. at 64:23-66:17, 96:1-17.)

Plaintiffs' rely heavily on Werner Engelmaier, a soldering expert, to establish that common issues of fact regarding the alleged class-wide defect predominate. This Court concludes that Engelmaier's testimony does not alleviate the problems regarding the individual factual issues that exist regarding the existence of an alleged class-wide defect. Engelmaier testified that he believed that the FinePix 3800 cameras contained a joint solder defect that would at some point cause intermittent or total loss of operational function. One of the bases for his conclusion was his examination of the used cameras belonging to named Plaintiffs; however, Engelmaier did not examine any other FinePix 3800 cameras besides those belonging to named Plaintiffs. Engelmaier admitted that he could not determine when or how the solder fractures in Plaintiffs' cameras had occurred or whether the joint fractures he found were in joints needed for the camera's functionality. (Engelmaier Dep. at 28:17-29:14, 31:22-33:13.) He also admitted that he could not make a causal connection between the fractured solder joints he found and the specific difficulties that Plaintiffs had encountered with their cameras. (*Id.* at 42:11-43:20, 44:2-7.) Engelmaier also acknowledged that "normal wear and tear" can contribute to "accumulating creep fatigue" in all solder joints in any soldered product over time. (*Id.* at 28:17-29:14.)

Plaintiffs also rely on a Troubleshooting Guide from Defendant that indicates that a soldering defect could be the cause of a power problem. However, that listing in the Troubleshooting Guide was based on a single camera that was found to contain the solder

10

problem, and the Troubleshooting Guide also contained other listings regarding causes of potential power problems. (Versfelt Decl., Ex. 8A-C.) This Court does not find the single listing in the Troubleshooting Guide to establish predominance of common factual issues regarding the defect and causation.

The Court recognizes that proof of a defect is necessary to all of Plaintiffs' claims in this case. *See Chin*, 182 F.R.D. at 451. Because the great majority of the proposed class has not experienced any malfunction with the FinePix 3800 camera and because individual issues of causation will still need to be adjudicated, the question of whether a defect exists in this case will need to be determined based on facts that are particular to each individual proposed class member. The Court agrees with the reasoning in *In re Canon Cameras Litigation* that to certify the class of all FinePix 3800 owners, then determine the few that suffered malfunctions, then determine which of those suffered "power related" malfunctions, and then determine which of those "power related" malfunctions are attributable to the alleged joint solder defect as opposed to the variety of other reasons for such power problems, "would render the class action device nothing more than a facade for conducting a small number of highly individualized cases." 237 F.R.D. at 360. For those reasons, this Court concludes that Plaintiffs have failed to establish that common issues of fact will predominate over the individual issues of fact that will necessarily need to be resolved with regard to the existence of the alleged class-wide defect.

### 2. Common Issues of Law Do Not Predominate

Plaintiffs assert that New Jersey law applies to their claims. Defendants, however, contend that the laws of the fifty states apply and that, therefore, common issues of law do not predominate. A district court "may not take a transaction with little or no relationship to the

forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985). In a diversity case, the district court must "apply the forum state's choice of law rule." *Gen. Star Nat'l Inc. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

With regard to choice of law, New Jersey has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008); *see also Agostino*, 256 F.R.D. at 461 (applying New Jersey's most significant relationship test to tort and breach of contract claims). The first prong of the most significant relationship test is to examine the applicable laws to determine whether an actual conflict exists. *Camp Jaycee*, 197 N.J. at 143. If no conflict exists, the inquiry ends there, and the court applies the law of the forum state. *Id.* However, once a conflict is established, the second prong of the most significant relationship test requires that the court "weigh the factors enumerated in the Restatement section corresponding to the Plaintiffs' cause of action." *Agostino*, 256 F.R.D. at 462; *see also Camp Jaycee*, 197 N.J. at 144.

In the class certification context, if the court determines that the laws of numerous states would apply to the prospective class, "plaintiffs bear the burden of providing an 'extensive analysis' of state law variations to determine whether there are 'insuperable obstacles' to class certification." *Chin*, 182 F.R.D. at 458 (citation omitted); *see also Agostino*, 256 F.R.D. at 466, 468. "'If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.'" *Id.* (quoting *In re Am. Med.Sys.,*

*Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)). The district court must then determine, prior to certification, whether the differences in the state laws defeat the predominance requirement of *Rule 23(b)(3)*. *Id.* (citing *Castano v. Am.Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996)).

### a. Consumer Fraud Claims

Plaintiffs argue that New Jersey has the most significant relationship in this case and that therefore the NJCFA should apply to their consumer fraud claims. Courts in this District have recognized that there are significant conflicts between the NJCFA and the consumer protection laws of other states, *see Agostino*, 256 F.R.D. at 461; *Elias v. Ungar's Food Prods., Inc.*, 252 F.R.D. 233, 247 (D.N.J. 2008), and Plaintiffs concede that such conflicts exist, (*see* Pl. Br. at 33). For example, some consumer fraud laws, such as the NJCFA, require that a plaintiff show ascertainable loss, *see* N.J. Stat. Ann. § 56:8-19, whereas other states' consumer protection statutes have no such requirement. *See Agostino*, 256 F.R.D. at 462; Mary Dee Pridgen, Consumer Protection and the Law App. 5A (2008). This Court concludes that actual conflicts exist between the NJCFA and the consumer protection laws of other states.

With regard to the second prong of the most significant relationship test, the Court will apply Section 148 of the Restatement (Second) of Conflict of Laws, which applies to claims involving fraud or misrepresentation. *See Agostino*, 256 F.R.D. at 462; Restatement (Second) of Conflict of Laws §148 (1971). Under Section 148(1) of the Restatement (Second):

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and

> the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 148 (1971). In *Agostino* the court applied Section 148(1) in determining which state's law to apply to the plaintiffs' claims that they had been injured by the defendants' fraud in connection with improper billing practices emanating from New Jersey. 256 F.R.D. at 462. The court determined that Section 148(1) "recognizes that the state in which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant relationship to the parties and the issues in the litigation." 256 F.R.D. at 462; *see also Nafar v. Hollywood Tanning Sys.*, 339 F. App'x 216, 221 (3d Cir. 2009). The court concluded that "while the purported illegal billing practices may have emanated from [Defendant's] home state of New Jersey, they were directed at each plaintiff's home state," and therefore "there is a strong presumption under Section 148 that the consumer fraud law of each class plaintiff's home state should apply to his respective claim." *Id.* at 463. The court also concluded that nothing in its analysis of the principles outlined in Section 6 of the Restatement (Second) of Conflict of Laws rebutted the presumption that each plaintiff's home state had the most significant relationship with the claims.[2]

Plaintiffs assert that New Jersey has the most significant relationship to the consumer fraud claims because New Jersey is the location of Defendant's principal place of business and is where it maintains its allegedly unconscionable warranty program. In support of their

---

[2] The New Jersey Supreme Court has recognized that the Section 6 principles, "reduced to their essence, . . . are: '(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.'" *Camp Jaycee*, 197 N.J. at 147 (quoting *Erny v. Estate of Merola*, 171 N.J. 86, 101-02 (2002)); *see also Agostino*, 256 F.R.D. at 463.

contentions, Plaintiffs point to the New Jersey Department of State's Business Entity Status Report that lists a "Principal Business Address" for Defendant in New Jersey. (Green Decl., Ex. 6.) Although the address of Defendant's New Jersey service center is listed as a "Principal Business Address," the Business Entity Status Report also indicates that Defendant's "Main Business Address" is in New York, that its "Home Jurisdiction" is in New York, and that all of its "Officers/Directors/Members" are located in New York (*see id.*), which supports Defendant's assertion that its headquarters are in New York. Moreover, even if Defendant has a principal place of business in New Jersey, that is not by itself sufficient to establish that New Jersey has the most significant relationship to Plaintiffs' consumer fraud claims. Rather, the court must examine the state's relationship within the context of the consumer fraud claims. *Agostino*, 256 F.R.D. at 462-63.

Plaintiffs' consumer fraud claims are based on the allegations that Defendant knowingly misrepresented material facts relating to the character and quality of the FinePix 3800 camera and that Defendant concealed, suppressed, and omitted information about the alleged defect in that camera. Those alleged fraudulent actions took place throughout the country, in each state where Defendant marketed, advertised, and sold the FinePix 3800 camera. As recognized in *Agostino*, "the state in which a prospective plaintiff acted in reliance on a defendant's fraud is presumed to have the predominant relationship to the parties and the issues in the litigation." 256 F.R.D. at 462. Here the allegedly fraudulent marketing and advertising occurred in each prospective plaintiff's home state, and each prospective plaintiff acted in reliance on Defendant's alleged fraud in the state in which they purchased their cameras. The fact that Defendant maintains a service center in New Jersey does not persuade this Court that New Jersey has the

most significant relationship to the consumer fraud claims of every prospective class member. *See Cooper v. Samsung Elecs. Am., Inc.*, No. 08-4736, 2010 U.S. App. LEXIS 6602, at *12 (3d Cir. Mar. 30, 2010) (finding that plaintiff who purchased a television in Arizona was not entitled to sue under the NJCFA, despite defendant's headquarters being located in New Jersey, because the claims bore the most significant relationship with Arizona, the state in which the television was marketed, purchased, and used). Therefore, the Court concludes that none of the arguments raised by Plaintiffs, nor any of the Section 6 principles, as discussed in *Agostino*, outweigh the strong presumption under Section 148 that the consumer fraud law of each prospective class member's home state should apply to that member's consumer fraud claims. *See Agostino*, 256 F.R.D. at 463.

   Having determined that the laws of the fifty states will apply to Plaintiffs' consumer fraud claims, the Court concludes that those claims cannot be certified because the common issues involved in the litigation of those claims would not predominate over the numerous variations in the application of the state laws. *See Agostino*, 256 F.R.D. at 466-67; *Szczubelek v. Cendant Mortgage Corp.*, 215 F.R.D. 107, 122 (D.N.J. 2002). The court in *Agostino* examined the consumer protection laws of different states and found that they "differ immensely from jurisdiction to jurisdiction." *Agostino*, 256 F.R.D. at 466. For example, only thirty-three states have authorized injunctive relief under their consumer fraud statutes, thirty-four states require that a plaintiff plead an "ascertainable loss" with regard to consumer fraud claims, and many states have varying statute of limitations periods applicable to such claims. *Id.* at 466-67. Plaintiffs have not provided the Court with any method for managing such individualized issues of state law, and the Court cannot find that the common issues relating to Plaintiffs' consumer

fraud claims would predominate over the factual and legal issues that would necessarily need to be addressed individually.

### b. State Law Contract Claims and Federal Warranty Claims

Plaintiffs' breach of contract, breach of warranty, Magnuson-Moss Warranty Act, and breach of implied covenant of good faith and fair dealing claims must also be analyzed according to New Jersey's most significant relationship test in order to determine which state's law to apply. *See Agostino*, 256 F.R.D. at 463; *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 34 (1980). Applying the first prong of the most significant relationship test, the Court recognizes that state breach of contract laws are in conflict with regard to issues such as "the application of the parol evidence rule, burdens of proof and statutes of limitations." *Agostino*, 256 F.R.D. at 463. State laws regarding breach of express and implied warranty also differ greatly with regard to "(1) whether plaintiffs must demonstrate reliance, (2) whether plaintiffs must provide notice of breach, (3) whether there must be privity of contract, (4) whether plaintiffs may recover for unmanifested . . . defects, (5) whether merchantability may be presumed and (6) whether warranty protections extend to used [goods]." *Cole v. GMC*, 484 F.3d 717, 726 (5th Cir. 2007); *see also Chin*, 182 F.R.D. at 460. Moreover, because Magnuson-Moss claims depend upon the state law warranty claims, the same conflicts with regard to breach of warranty are applicable to Plaintiffs' Magnuson-Moss claims as well. *See Cooper v. Samsung Elecs. Am., Inc.*, No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *18-19 (D.N.J. Sep. 30, 2008). Additionally, state laws regarding breach of the implied covenant of good faith and fair dealing are also in conflict with regard to issues such as statutes of limitations, *Paul v. Prudential Ins. Co. of Am.*, No. 08-6197, 2009 U.S. Dist. LEXIS 84093, at *57 (D.N.J. Sept. 14, 2009),

requirements for bad faith, *see Woodard v. Fid. Nat'l Title Ins. Co.*, No. 06-1170, 2008 U.S. Dist. LEXIS 108411, at *21-22 (D.N.M. Dec. 8, 2008), and whether it is even recognized as a separate cause of action, *Novartis Pharms. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 U.S. Dist. LEXIS 92133, at *11-12 (D.N.J. Nov. 12, 2008). Thus, the Court concludes that there are actual conflicts between the contract laws of New Jersey and other states.

Turning to the second prong of the most significant relationship test, the Court will apply Section 188 of the Restatement (Second) of Conflict of Laws to Plaintiffs' claims sounding in contract or quasi-contract. *See Agostino*, 256 F.R.D. at 464 (breach of contract), *Harper v. LG Elec. USA, Inc.*, 595 F. Supp. 2d 486, 489 (D.N.J. 2009) (breach of warranty); *Paul*, 2009 U.S. Dist. LEXIS 84093, at *58 (breach of duty of good faith and fair dealing). In determining which state law has the most significant relationship, the analysis under Section 188 requires the court to consider: "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Agostino*, 256 F.R.D. at 464; *see Restatement (Second) of Conflict of Laws §188* (1971).

Applying those factors, this Court concludes that the prospective class members' home states each have the most significant relationship with the Plaintiffs' contract claims. Plaintiffs contend that Defendant's breaches occurred as a result of Defendant selling Plaintiffs cameras they allege were inherently defective. The advertising, marketing, and sales of those cameras took place throughout the country, and each state has the most significant relationship with the individual transactions that took place in its state. Thus, the first four factors of the Section 188 analysis weigh heavily in favor of applying the law of each plaintiff's home state. Although

Defendant maintains a service center in New Jersey where camera purchasers were directed to mail their warranty cards, the Court cannot conclude that that factor alone establishes that New Jersey has the most significant relationship to every prospective class member's contract claims, especially where Defendant's headquarters are located in New York, not New Jersey. Plaintiffs' express warranty claims are based on the assertion that the warranties were unconscionable and grossly inadequate and that because the camera was defective, they never received goods as expressly warranted by Defendant. Moreover, Plaintiffs assert that the Defendant's designers, manufacturers, marketers, distributors and sellers are responsible for making the express and implied warranties. Plaintiffs' claims relating to the alleged breaches of warranty do not, however, emanate from Defendant's New Jersey service center; rather, they existed at the time of contract when the individual prospective class members purchased their cameras in their home states. Weighing all of the factors, this Court concludes that each state has the most significant relationship with the contract claims asserted by plaintiffs from their home state, and therefore the Court will apply the laws of each of the prospective class member's home states.

As discussed above in the choice of law analysis, state laws regarding breach of contract, breach of warranty, and breach of the implied covenant of good faith and fair dealing vary greatly with respect to issues such as statutes of limitations, parol evidence, burdens of proof, reliance, and privity. Plaintiffs have not satisfied their burden of outlining a manageable way for the Court to deal with the variations in state law claims in a class action. *See Agostino*, 256 F.R.D. at 466, 468; *Chin*, 182 F.R.D. at 458. The application of the various state laws to each prospective class member would require individualized inquiries into the facts of each transaction, and therefore this Court concludes that common issues of law do not predominate

19

over Plaintiffs' contract claims.

The Court concludes that Plaintiffs have not established that the issues of law and fact common to the prospective class predominate over the individual issues that would need to be addressed at trial. *See* Fed. R. Civ. P. 23(b)(3); *Hydrogen Peroxide*, 552 F.3d at 311. The application of the differing laws of the fifty states to the prospective class member's claims would require individual treatment of the essential causes of action. The necessity of such individualized treatment, combined with the individual factual issues relating to the alleged class-wide defect itself, lead this Court to conclude that individual issues predominate over the common questions of law or fact. Thus, Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3), and therefore this Court will deny Plaintiffs' motion for class certification.

## III. CONCLUSION

For the foregoing reasons, this Court will deny Plaintiffs' motion for class certification (Doc. No. 61). An appropriate form of order accompanies this Memorandum Opinion.


Dated: May 28, 2010
Newark, New Jersey

                                                    S/Garrett E. Brown, Jr.
                                                    Garrett E. Brown, Jr., Chief Judge
                                                    United States District Court